**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE BOSTON CONSULTING GROUP, INC., <br><br>             Plaintiff, <br><br>    vs. <br><br> NCR CORPORATION, <br><br>             Defendant. | No. 1:19-cv-10156-LGS <br><br> **STIPULATED ORDER RE: ESI AND DOCUMENT PRODUCTION PROTOCOL** |
| NCR CORPORATION, <br><br>             Counterclaim-Plaintiff, <br><br>    vs. <br><br> THE BOSTON CONSULTING GROUP, INC., <br><br>             Counterclaim-Defendant. | |

This protocol (the "Protocol") governs the search, processing, and production of Electronically Stored Information ("ESI") and Hard-Copy Documents by the Parties during the pendency of this litigation.

**A.  Definitions**

   1.  "**Confidentiality Designation**" means the legend affixed to Documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" as defined by, and subject to, the terms of the Protective Order entered in this matter (*i.e.*, information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c). A Producing Party may designate any Disclosure or Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, commercially sensitive information, and/or private or confidential

personal information or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" if the Producing Party believes, in good faith, that the "CONFIDENTIAL" information contains or reflects information that is competitively or commercially confidential to such an extent that its disclosure is likely to cause significant economic harm to the Producing Party). For the avoidance of doubt, nothing in this Protocol shall contradict or impair the Parties' rights and obligations with respect to any information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Protective Order.

2. "**Document**" or "**Documents**" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents. The Parties intend for the definition of Document or Documents to have the broadest possible meaning and expressly incorporate by reference the definitions of those terms contained in Plaintiff's First Set of Requests for the Production of Documents, dated December 6, 2019, and Defendant's First Request for Production of Documents to Plaintiff, dated January 16, 2020.

3. "**Electronically Stored Information**" or "**ESI**" means any Document or Documents stored or transmitted in electronic form. The Parties intend for the definition of Electronically Stored Information or ESI to have the broadest possible meaning and expressly incorporate by reference the definitions of those terms contained in Plaintiff's First Set of

Requests for the Production of Documents, dated December 6, 2019, and Defendant's First Request for Production of Documents to Plaintiff, dated January 16, 2020.

4. "**Hard-Copy Document**" means any Document existing in paper form at the time of collection.

5. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

6. "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to".

7. "**Load Files**" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

8. "**Metadata**" means the information associated with each Document that is identified in Attachment A.

9. "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

10. "**Optical Character Recognition**" or "**OCR**" means the process of recognizing, and creating a file containing, visible text within an image.

11. "**Producing Party**" means and refers to the Party upon whom a request for the production of Documents is served.

12. "**Requesting Party**" means and refers to the Party that serves a request for the production of Documents.

13. "**Searchable Text**" means the text extracted or generated using OCR from any Document, which allows the Document to be electronically searched.

**B.     Preservation**

1. The Parties represent that they have issued litigation hold notices to individuals whom they reasonably believe to possess relevant Documents, and have established reasonable and proportionate procedures to ensure that those notices have been received, understood and appropriately acted upon.

2. The Parties represent that they have taken reasonable and proportionate steps to suspend or modify regular or automatic policies or practices that would result in the loss of relevant Documents.

3. The Parties shall have a continuing obligation to identify sources of relevant Documents and to take reasonable and proportionate steps to preserve them.

**C.     Identification of Responsive ESI**

1. A Producing Party shall undertake a reasonable inquiry to identify all sources of ESI (*e.g.*, email, workstations, mobile devices, electronic messaging tools) likely to contain material responsive to a Requesting Party's document requests ("Responsive Sources").

2. The Parties agree that in responding to a Fed. R. Civ. P. 34 document request, they will meet and confer about methods and protocols, including the use of search terms and/or other automated search and review technology, to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

3. If a Producing Party identifies a Responsive Source that it does not intend to search because the source is not reasonably accessible because of undue burden or cost, or for any other reason, the Producing Party shall timely disclose that intention and set forth the justification for not searching that Responsive Source. The Parties shall timely meet and confer

regarding any disputes regarding the Responsive Sources to be searched, and submit any unresolved disputes to the Court for resolution.

**D.     Processing Specifications for ESI**

1.     <u>De-Duplication</u>.  A Producing Party may remove Documents identified as duplicative based on MD5 or SHA-1 hash values of the full text of the Documents at the family level across custodians and sources.  A Producing Party may use other reasonable methods to remove duplicate Documents from production provided that method is disclosed to the Requesting Party.

2.     <u>Email Threading</u>.  The Parties are permitted to use commercially available email threading tools to remove emails and their attachments where the contents of the email and its attachments are wholly included within another email and its attachments that are not removed.  Upon request a Party will disclose the tool used for email threading.

3.     <u>De-NISTing</u>.  Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology (NIST).  Additional culling of system files based on file extension may include:  WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.

4.     <u>Embedded Objects</u>.  Non-image files that are embedded in other files ("Embedded Objects") shall be extracted as separate files and treated as attachments to the parent Document

unless the Producing Party notifies the Requesting Party in writing otherwise. The Parties shall meet and confer over any dispute with regard to the treatment of Embedded Objects.

5. Searchable Text. Text must be extracted directly from the native electronic file of ESI unless the Document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.,* non-searchable PDFs), in which case Searchable Text may be created using OCR. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows. Extracted text from emails shall include all header information that would be visible if the email was viewed natively including: (1) the individuals to whom the communication was directed, (2) the author of the email communication, (3) who was copied and blind copied on such email, (4) the subject line of the email, (5) the date and time of the email, and the names of any attachments.

6. Exception Files. The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted and/or protected files) ("Exception Files"). A Party is not required in the first instance to produce Exception Files it has been unable to resolve through commercially reasonable efforts except that: (a) the Parties will meet and confer regarding any request to produce a log of all Exception Files that contains the reasonably available Metadata for each Exception File; (b) the Parties will meet and confer regarding requests for the production of native versions of Exception Files; and (c) upon reasonable request, the Producing Party will undertake reasonable efforts to locate passwords for specifically identified Documents. Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder TIFF bearing the legend, "This Document was unable to be processed." If the Parties cannot reach agreement on the handling of Exception

Files through the meet and confer process, the matter may be submitted to the Court for resolution.

**E.      Processing Specifications for Hard-Copy Documents**

1.      <u>General</u>.  Hard-Copy Documents are to be scanned as they are kept in the ordinary course of business.  For Hard-Copy Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable.  The Producing Party will use reasonable efforts to unitize Hard-Copy Documents, meaning, avoiding merging distinct Hard-Copy Documents into a single record, and splitting a single Hard-Copy Document into multiple records.  Original Document orientation (*i.e.*, portrait v. landscape) should be maintained.

2.      <u>Searchable Text</u>.  For Hard-copy Documents, Searchable Text shall be created using OCR.

**F.      Production Format**

1.      <u>General</u>.  Except as otherwise provided herein, the Parties will produce Documents in TIFF Format.  Spreadsheets (*e.g.*, Excel files), image files (with the exception of PDF file types), audio files, and video files shall be produced in Native Format.  A Requesting Party may request the production of Native Files of other Documents (*e.g.*, PowerPoint Presentations) where the production of the Native File is reasonably necessary to the Document's comprehension or use, and such request shall not unreasonably be denied.

2.      <u>TIFFs</u>.  All TIFFs produced by any party in this matter will be single page Group IV TIFF format with 300 dpi quality or better.  TIFF files will be named according to the corresponding Bates numbered images.  All Documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can

display will be processed such that all that data is visible in the image. Each TIFF image will be branded in the lower right-hand corner with its corresponding Bates number, and in the lower left-hand corner with its Confidentiality Designation, if any, using a consistent font type and size. The Bates number and Confidentiality Designation must not obscure any part of the underlying image. If the placement of either Bates number or Confidentiality Designation will result in obscuring the underlying image, the designation should be placed as near to that position as possible while preserving the underlying image.

3. <u>Native Files</u>. For Documents produced in Native Format a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format" shall also be produced in the same way as any other TIFF, including with the relevant Confidentiality Designation, if any. Native Files shall have a file name that includes the Bates number. Any Party printing the Native File for use in this matter shall append and use the placeholder TIFF as a cover sheet to the Native File at all times.

4. <u>Load Files</u>. Productions will include image load files in Opticon or IPRO format and Concordance format data (.dat) files with reasonably available Metadata for all Documents. All Metadata will be produced in UTF-16LE or UTF-8 as exported by commercially available document production tools.

5. <u>Text Files</u>. A single text file containing the Searchable Text shall be provided for each Document. The text file name shall be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed. File names shall not have any special characters or embedded spaces. Searchable Text shall be provided in UTF-8 as exported by commercially available document production tools.

6. <u>Databases, Structured, Aggregated or Application Data</u>. For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties will use reasonable best efforts to produce the data and will meet and confer to determine an appropriate format. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

7. <u>Redactions</u>. Metadata will be provided for redacted Documents just as for other Documents, except that text within Metadata fields may be replaced with the word "Redacted" for any information that is subject to redaction. Redacted Documents shall be identified as such in the Metadata.

8. <u>Color</u>. PowerPoint files shall be produced in color. Other Documents where color is reasonably necessary to their comprehension or use (*e.g.*, Documents with track changes or emails with color text) shall be produced in color. Documents produced in color shall be produced as single-page, JPG images with JPG compression and a high quality setting as to not degrade the original image.

9. <u>Parent-Child Relationships</u>. Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved through the production of an appropriate Metadata field.

10. <u>Family Groups</u>. A Document and all other Documents in its attachment range, emails with attachments and files with extracted embedded OLE Documents all constitute family groups. If any member of a family group is determined to be responsive to a Party's document requests, then all members of that group must also be considered as responsive.

11. <u>Production Media</u>. The Producing Party will use the appropriate electronic media (CD, DVD or hard drive) for its production, where necessary, and will use high-capacity media

to minimize associated overhead. The Producing Party may use an electronic form of transmission, *e.g.*, secure file transfer, for productions with a volume size of less than 10 GB. The Producing Party will label the physical media with the Producing Party name, media volume name, and Document number range.

G.  **Privilege Log**

1.  The Producing Party shall provide the Requesting Party with a log of the Documents withheld for privilege containing information sufficient to enable the Requesting Party to evaluate the claims made, including the following information: Custodian, From, To, CC, BCC, Date, Basis for Withholding (*e.g.*, Attorney-Client Communication), and Document Description. In-house attorney names shall be designated with an asterisk; outside counsel attorney names will be designated with a double asterisk.

2.  A single Document containing multiple email messages (*i.e.*, in an email chain) may be logged as a single entry. A Document family (*e.g.*, email and attachments) may be logged as a single entry so long as the log entry accurately describes both the email and its attachment(s).

3.  A party is not required to log redacted Documents but the parties agree to respond to reasonable requests for additional information regarding the basis for redactions on specific Documents where the basis is unclear from the Document itself.

4.  The Parties are not required to log privileged Documents created after December 31, 2019.

H.  **Expert Discovery**

1.  The Parties agree that expert disclosures, including each side's expert reports, shall comply with the requirements of Federal Rule of Civil Procedure 26(a)(2), except as modified herein.

2. Neither Party must preserve, disclose (including in expert deposition testimony or in response to interrogatories or requests for the production of documents), or place on a privilege log the following documents or materials: (i) any form of communication or work product shared between any expert witness, on the one hand, and the party offering the testimony of such expert witness, the in-house or outside litigation counsel for such party, other expert witnesses, non-testifying expert consultants, and/or the expert witness' assistants and/or clerical or support staff, on the other hand, unless the expert relied on the communication or work product for her/his final expert report or opinions being offered in this matter; (ii) an expert's notes or any other writings taken or prepared by or for an expert witness (including without limitation correspondence or memos to or from, and notes of conversations with, the expert's assistants and/or clerical or support staff, other expert witnesses or non-testifying expert consultants, or one or more attorneys for the party offering the expert witness), unless the expert relied on the notes or other writings for her/his final expert report or opinions being offered in this matter; or (iii) draft expert reports, draft studies, or draft work papers; preliminary or intermediate calculations, computations, or data runs; or other preliminary, intermediate or draft materials prepared by, for or at the direction of an expert witness, unless the expert relied on such material for her/his final expert report or opinions being offered in this matter.

3. The Parties shall disclose the following materials in connection with all expert reports: (a) a list by Bates number of all documents relied upon by the testifying expert(s); (b) copies of any materials relied upon by the expert not previously produced, to be identified by Bates number or a similar method agreed to by the Parties; and (c) for any calculations appearing in the report, all data and programs underlying the calculation, including all programs and codes necessary to recreate the calculation from the initial ("raw") data files.

**I.     Limitations and Non-Waiver.**

1. This Protocol applies to Documents produced on or after the date this Protocol is fully executed.

2. Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**J.     General Provisions.**

1. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing.

2. The Parties will meet and confer to resolve any dispute regarding the application of this Protocol before seeking Court intervention.

IT IS SO STIPULATED.

So Ordered.

The parties shall comply with this Court's Individual Rules when requesting to file on ECF documents or information designated confidential under seal.

The parties are advised that the Court retains discretion as to whether to afford confidential treatment to redacted information in Orders and Opinions.

Dated: April 3, 2020
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

12

| CADWALADER, WICKERSHAM & TAFT LLP | CRAVATH, SWAINE & MOORE LLP |
|---|---|
| Dated: April 4, 2020 | Dated: April 4, 2020 |
| */s/ Jason M. Halper* | */s/ David R. Marriott* |
| Jason M. Halper<br>Todd Blanche<br>Jared Stanisci | David R. Marriott<br>Yonatan Even |
| 200 Liberty Street<br>New York, NY 10281<br>(212) 504-6000<br>jason.halper@cwt.com<br>todd.blanche@cwt.com<br>jared.stanisci@cwt.com | Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>(212) 474-1000<br>dmarriott@cravath.com<br>yeven@cravath.com |
| *Attorneys for Plaintiff-Counterclaim Defendant* | *Attorneys for Defendant-Counterclaim Plaintiff* |

**Attachment A**

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | Name of person from where Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| BEGBATES | Beginning Bates Number (production number). | All |
| ENDBATES | Ending Bates Number (production number). | All |
| BEGATTACH | First Bates number of family range (*i.e.* Bates number of the first page of the parent Document). | All |
| ENDATTACH | Last Bates number of family range (*i.e.* Bates number of the last page of the last attachment or, if no attachments, the Document itself). | All |
| PAGE COUNT | Number of pages in the Document. | All |
| APPLICATION | Commonly associated application for the specified file type. | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format. | All |
| TEXTPATH | File path for OCR or Extracted Text files. | All |
| FOLDER | Folder location of the e-mail within the PST/OST. | E-mail |
| FROM | Sender. | E-mail |
| TO | Recipient. | E-mail |
| CC | Additional Recipients. | E-mail |
| BCC | Blind Additional Recipients. | E-mail |
| SUBJECT | Subject line of e-mail. | E-mail |
| DATESENT | Date Sent (mm/dd/yyyy hh:mm:ss AM). | E-mail |
| DATERCVD | Date Received (mm/dd/yyyy hh:mm:ss AM). | E-mail |
| OUTLOOK TYPE | Type of Outlook item, *e.g.*, e-mail, calendar item, contact, note, task. | Outlook or similar system data |
| CONVERSATION ID | Identifier indicating the email thread to which an email belongs. | Outlook or similar system |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1). | All |

| Field | Definition | Doc Type |
|---|---|---|
| FILENAME | Original file name at the point of collection. | E-Document |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. | E-Document |
| TITLE | Internal Document property. | E-Document |
| AUTHOR | Creator of a Document. | E-Document |
| DATE CREATED | Creation Date (mm/dd/yyyy hh:mm:ss AM). | E-Document |
| LAST MODIFIED BY | Last person who modified (saved) a Document. | E-Document |
| LAST MODIFIED DATE | Last Modified Date (mm/dd/yyyy hh:mm:ss AM). | E-Document |
| DOCUMENT TYPE | Descriptor for the type of Document: **"Edoc"** for electronic Documents not attached to e-mails; **"Email"** for all e-mails; **"Attach"** for files that were attachments to e-mails; and **"Hard Copy"** for Hard-Copy Documents. | All |
| REDACTED | "Yes" for redacted Documents; "No" for un-redacted Documents. | All |
| REDACTION BASIS | Basis of redaction (*e.g.*, Attorney-Client Communication, Attorney Work Product). If more than one are contained in a Document, separate reasons by semi-colons. | All |
| PRODVOL | Name of media that data was produced on. | All |
| CONFIDENTIALITY | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| TIMEZONE | Timezone of data at time of Ingestion. | All |
| EXCEPTION | "Yes" for Documents that were processing or extractions exceptions, blank/null if not present. | All |
| EXCEPTION REASON | Reason the item is flagged as an exception. | All |