UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
BOSTON CONSULTING GROUP, INC.,                   :
     Plaintiff / Counterclaim Defendant,          :
                                      :          19 Civ. 10156 (LGS)
         -against-                                   :
                                        :          **OPINION AND ORDER**
NCR CORPORATION,                                 :
     Defendant / Counterclaim Plaintiff.          :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Defendant / Counterclaim Plaintiff NCR Corporation ("NCR") asserts four counterclaims

against Plaintiff / Counterclaim Defendant Boston Consulting Group ("BCG").  The

Counterclaims allege that, by entering into a clandestine *quid pro quo* arrangement with NCR's

former Chief Operating Officer ("COO") and engaging in other acts of corporate sabotage, BCG

breached its obligations to NCR created by the mutually agreed upon Statement of Work

("SOW").  NCR asserts the following counterclaims: (1) breach of fiduciary duty; (2) aiding and

abetting the breach of fiduciary duty; (3) breach of contract; and (4) breach of the implied

covenant of good faith and fair dealing.  BCG moves to dismiss the counterclaims under Federal

Rule of Civil Procedure ("FRCP") 12(b)(6).  For the reasons stated herein, BCG's motion is

granted in part and denied in part.

    **I.**        **BACKGROUND**

The following facts are drawn from the Answer and Counterclaims and are accepted as

true only for purposes of this motion.  The facts are construed, and all reasonable inferences are

drawn, in favor of NCR as the non-moving party.  *See Trs. of Upstate N.Y. Eng'rs Pension Fund*

*v. Ivy Asset Mgmt.*, 843 F.3d 561, 588 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).

BCG is a management consulting firm, incorporated in Massachusetts with its principal place of business in Boston, Massachusetts, offering expert consulting services in a broad range of industries.  NCR is a software, hardware and services provider, incorporated in Maryland with its principal place of business in Atlanta, Georgia, that produces automated teller machines and point of sale hardware and software solutions.

In early 2016, due to the declining health of Bill Nuti ("Mr. Nuti"), NCR's then Chief Executive Officer ("CEO"), NCR conducted a search for candidates who could potentially succeed to the role of CEO.  On September 21, 2016, NCR announced that Mark Benjamin ("Mr. Benjamin") would join the company as President and COO with the hope that Mr. Benjamin would ultimately prove himself able to succeed Mr. Nuti as CEO.  Mr. Benjamin had previously served as President of Automatic Data Processing, LLC's Enterprise Solutions division where he developed a relationship with Jeff Kotzen ("Mr. Kotzen"), Managing Director and Senior Partner at BCG.

Soon after he joined NCR, Mr. Benjamin engaged BCG and Mr. Kotzen to "sell" BCG a lucrative project at NCR with the promise of paying BCG a large "discretionary bonus" in exchange for BCG and Mr. Kotzen assisting to accelerate Mr. Benjamin's ascent to the role of CEO.  The Counterclaims allege that Mr. Benjamin and Mr. Kotzen worked together to expedite NCR's review of BCG's project, known as "Mission One," and that they sought to minimize or eliminate contrary voices.  The resulting SOW was unduly favorable to BCG with minimal details on deliverables and a compensation structure that would richly reward BCG regardless of whether it brought incremental value to NCR.

Mr. Kotzen and Mr. Benjamin subsequently worked together on a BCG presentation to the NCR Board.  At the presentation, BCG criticized Mr. Nuti's style of leadership and

recommended that Mr. Benjamin be immediately elevated to CEO.  The meeting resulted in increased scrutiny of Mr. Benjamin and BCG's engagement.  When the NCR Board decided to conduct a 360-feedback performance review of Mr. Benjamin, he turned to Mr. Kotzen for help securing alternate employment.  On March 2, 2018, Mr. Benjamin presented to the NCR Board on the status of Mission One and the specifics underlying BCG's calculation of $1 billion net present value for Mission One.  At this meeting, Mr. Benjamin delivered an ultimatum that he be made CEO of the company immediately or he would leave.  On March 22, 2018, Mr. Benjamin left NCR to become the new CEO of Nuance Communications ("Nuance").

In late March, 2018, Mr. Nuti resigned from NCR for health reasons and NCR hired a new CEO, COO and Chief Financial Officer.  The newly hired executives clashed with BCG over the calculation of adjusted gross margin and adjusted gross margin improvement (a basis for assessing BCG's fees), business strategy and re-assessment of margin improvement targets for the Services business.  Eventually, NCR refused to pay BCG's fees, and this litigation ensued.

BCG commenced this action in November, 2019, alleging that NCR had breached the SOW by failing to pay at least $1,470,000 in fees.  NCR answered and asserted four counterclaims against BCG, which are the subject of this motion.

## II.    STANDARD

FRCP 13 governs counterclaims and crossclaims against parties already in an action.  A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a claim in the complaint.  *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101 (2d Cir. 2019) (finding that counterclaims may be evaluated by the district court for legal sufficiency after being properly challenged in a FRCP 12(b)(6) motion).

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inference in favor of the non-moving party, *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 556, but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."  *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *accord Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 532-33 (S.D.N.Y. 2017).

"A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state."  *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018).  "New York choice-of-law rules also require[] the court to honor the parties' choice [of law provision] insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated."  *Bank of New York v. Yugoimpact*, 745 F.3d 599, 609 (2d Cir. 2014) (quotation marks omitted) (alteration in original).  Here, New York law applies as the SOW expressly provides that it is governed by New York law.

### III.    DISCUSSION

### A.  Breach of Fiduciary Duty (Count 1)

NCR has alleged sufficient facts to show that a fiduciary relationship existed between BCG and NCR and that BCG breached its fiduciary duty by failing to disclose its secret relationship with Mr. Benjamin.

The elements of a claim for breach of fiduciary obligation under New York Law are: (1) the existence of a fiduciary duty; (2) knowing breach of that duty; and (3) resulting damages. *Johnson v. Nextel Commc'ns., Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (internal citation omitted) (applying New York law); *accord Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P*, No. 14 Civ. 2065, 2015 WL 13654007 at *15 (S.D.N.Y. Mar. 26, 2015).

A fiduciary relationship is established "between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *EBI I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005) (internal citation and quotation omitted); *accord Lynch v. Nat'l Prescription Adm'rs, Inc.*, 795 Fed. App'x 68, 69 (2d Cir. 2020) (summary order).  "Put differently, a fiduciary relation exists when confidence is reposed on one side and there is a resulting superiority and influence over the other." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 980 (N.Y. 2009) (internal quotations omitted); *see also Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 796 N.Y.S.2d 77, 79 (1st Dep't 2005) (relying on another's superior expertise or knowledge will establish a fiduciary relationship); *accord Appel*, 2015 WL 13654007 at *15.  Such a relationship is fact specific and is grounded in a higher level of trust than is normally present between those involved in an arm's-length business transaction.  *Sergeants Benevolent Ass'n Annuity Fund*, 796 N.Y.S.2d at 79.  A fiduciary's "liability is not dependent solely upon an agreement or contractual relation

between the fiduciary and the beneficiary but results from the relation." *Id*. (internal quotations omitted).

"[It] is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect." *Birnbaum v. Birnbaum*, 539 N.E.2d 574, 576 (N.Y. 1989). This duty bars "not only blatant self-dealing, but also requir[es] avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Id.* at 576; *accord United States v. Marin*, No. 13 Civ. 9307, 2020 WL 378094 at *6 (S.D.N.Y. Jan. 23, 2020) (applying New York law). Once a fiduciary relationship is established, a fiduciary must act for the benefit of another on all matters within the scope of their relationship. *United States v. Halloran*, 821 F.3d 321, 338 (2d Cir. 2016) (applying New York law).

The Counterclaims allege sufficient facts to show that BCG owed NCR a fiduciary duty. BCG offers expert consulting services in a broad range of industries and was retained by NCR for the purpose of benefiting from that expertise. Under the SOW, BCG committed to NCR that the two entities would "function as a true partnership with aligned goals and incentives . . . ." In the SOW, BCG made it clear that it was "very important that BCG has a 'seat at the table' with NCR's and Services' Leadership Teams with a hands-on ability to appropriately influence key decisions and outcomes . . . ." The SOW further provides that BCG's participation in NCR's senior leadership meetings would permit BCG to voice opinions on key decisions that extended beyond the initiatives it was directly working on. This included the ability to "influence the outcome of all Services initiatives—whether they are led by NCR or BCG." The Counterclaims plead sufficient facts to show that NCR relied on BCG's expertise by permitting BCG directly and fully to access Services systems, data sources, calendars, SharePoint sites and networks.

BCG was further allowed to participate in roundtable discussions, conduct 1-on-1 interviews with employees, and interpret data.  In short, the Complaint plausibly alleges that, based on the SOW, NCR reposed its confidence in BCG to use its knowledge and expertise to provide NCR with advice on critical business decisions.

BCG argues that it had no fiduciary obligation because BCG did not exercise control or dominance over NCR that would transform their contractual relationship into a fiduciary one. That argument is unpersuasive because the explicit terms of the contract grant BCG significant influence over NCR's decision-making processes for matters related and unrelated to BCG's initiatives at NCR as well as nearly unfettered access to confidential information and data.

The Counterclaims sufficiently plead the second element of a breach of fiduciary duty claim, that BCG violated its duty when it failed to disclose its secret *quid pro quo* relationship with Mr. Benjamin where BCG would help Mr. Benjamin ascend to the CEO position in exchange for a discretionary bonus.

BCG argues that the claim for breach of fiduciary duty should be dismissed because it is duplicative of the breach of contract claim.  A "contracting party may be charged with a separate tort liability arising from a breach of duty distinct from, or in addition to, the breach of contract." *N. Shore Bottling Co. v. Schmidt & Sons, Inc.*, 239 N.E.2d 189, 193 (N.Y. 1968); *accord Morgan Art Found. Ltd. v. Brannan*, No. 18 Civ. 8231, 2020 WL 469982 at *22 n.19 (S.D.N.Y. Jan. 28, 2020).  "It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself."  *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (1st Dep't 1987); *accord 37 E. 50th St. Corp. v. Rest. Grp. Mgmt. Servs., L.L.C.*, 68 N.Y.S.3d 424, 427 (1st Dep't 2017).  However, the same conduct that constitutes a

breach of a contractual obligation may separately constitute a breach of a duty arising from the

relationship created by the contract if that duty is independent from the contract itself.

*Mandelblatt*, 521 N.Y.S.2d at 676; *accord Great W. Ins. Co. v. Graham*, No. 18 Civ. 6249, 2020

WL 3415026 at *18 (S.D.N.Y. June 22, 2020).  Here, BCG's alleged fiduciary obligation to

disclose a secret relationship that may run counter to NCR's interests is separate and distinct

from BCG's contractual obligations -- such as working as partners to "win in the market" or

improperly using confidential information.

Accordingly, BCG's motion to dismiss NCR's breach of fiduciary duty claim is denied.

### B.  Aiding and Abetting a Breach of Fiduciary Duty Claim (Count II)

The Counterclaims plead sufficient facts to support a claim that BCG aided and abetted

Mr. Benjamin's breach of fiduciary duty to NCR.  "'A claim for aiding and abetting a breach of

fiduciary duty [under New York law] requires: (1) a breach by a fiduciary of obligations to

another, (2) that the defendant knowingly induced or participated in the breach, and (3) that

plaintiff suffered damage as a result of the breach.'"  *Johnson v. Nextel Commc'ns, Inc.*, 660

F.3d 131, 142 (2d Cir. 2011) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't

2003)); *accord Lightbox Ventures, LLC v. 3rd Home Ltd.*, No. 16 Civ. 2379, 2017 WL 5312187

at *14 (S.D.N.Y. Nov. 13, 2017).  In general, officers and directors owe fiduciary duties to their

corporation.  *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 165 (2d Cir. 2003) (citing

N.Y. Bus. Corp. Law § 715(h)); *accord Smith v. Smith*, No. 17 Civ. 5548, 2019 WL 1755517 at

*10 (S.D.N.Y. Apr. 19, 2019) (construing New York law).  This includes a duty of loyalty that

precludes self-dealing.  *See Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir. 1984)

(applying New York law); *accord Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir.

2016) (applying New York law).

It is undisputed that Mr. Benjamin, as an officer of NCR, owed NCR a fiduciary duty that includes a duty of loyalty.  The Counterclaims allege sufficient facts to show that Mr. Benjamin breached that duty by entering into a secret agreement with BCG to promote and expedite his candidacy for CEO.  The Counterclaims further allege sufficient facts to show that BCG worked with Mr. Benjamin to negotiate a one-sided contract, and remove and replace employees who opposed adoption of the contract, and that BCG advocated for Mr. Benjamin's promotion to CEO in hopes that he would award BCG with a discretionary bonus.

BCG argues that the aiding and abetting counterclaim fails to plead actual knowledge that BCG helped Mr. Benjamin find his position at Nuance, and that the aiding and abetting claim is duplicative of the first breach of fiduciary duty claim.  Neither of these arguments is persuasive because the underlying breach, Mr. Benjamin's alleged collusion with BCG to accelerate his promotion to CEO, is distinct from his securing alternative employment at Nuance and from BCG's alleged nondisclosure of its *quid pro quo* relationship with Mr. Benjamin.

Accordingly, BCG's motion to dismiss the aiding and abetting the breach of fiduciary duty counterclaim is denied.

### C.  Breach of Contract Claim (Count III)

The breach of contract counterclaim sufficiently pleads facts that BCG breached the SOW by facilitating the exit of Mr. Benjamin and improperly using confidential information. Under New York law, a claim for breach of contract requires proof of (1) an agreement, (2) adequate performance by one party, (3) breach by the other party, and (4) resulting damages. *See Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (construing New York law); *accord Twinkle Play Corp. v. Alimar Props., Ltd.*, No. 2018-10896, 2020 WL 5540060 at *1 (N.Y. App. Div. 2d Dep't Sept. 16, 2020).

The Counterclaims plausibly allege that BCG had a contractual obligation to help NCR "win in the market."  In the context of the SOW when read as a whole, the phrase "win in the market" can plausibly be read to mean improving NCR's business initiatives and retaining NCR's talented employees.  Specifically, the "Vision" and "Objectives for BCG's work with Services" sections of the SOW provide specific goals, including accelerating the execution of in-flight and new initiatives, continuing top-line growth and margin expansion, and improving NCR's capabilities and processes.  The SOW states that "building a strong foundation for long-term success" requires that both NCR and BCG commit to putting their "very best talent on the program."  BCG breached its contractual obligation to help NCR "win in the market" by helping Mr. Benjamin exit from NCR, thus facilitating the departure of a talented member of the NCR Services team.

The Counterclaims also plausibly allege that BCG breached the SOW by using confidential information to help Mr. Benjamin secure employment at Nuance.  Under the SOW, BCG committed to using confidential information it received from NCR only for work on the engagement.  Allegedly helping a key employee secure other employment was not part of the scope of work envisioned by the SOW.

BCG argues that the alleged facts do not support a claim for breach of the SOW because there is no allegation that NCR's gross margin or the net present value of Services declined. BCG further points to public statements made by NCR to the Securities and Exchange Commission communicating revenue growth and margin expansion in Services.  At this stage, these arguments do not displace the plausibility of NCR's claims.  Even if BCG's involvement with NCR had a net positive impact, BCG's breach might have inhibited NCR's ability to realize fully its potential to win in the market.

Accordingly, the motion to dismiss the breach of contract counterclaim is denied.

**D. Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV)**

NCR's counterclaim for breach of the implied covenant of good faith and fair dealing is dismissed because it relies on the same facts underlying its claim for breach of contract.  Under New York law, "implicit in every contract is a covenant of good faith and fair dealing…which encompasses any promises that a reasonable promisee would understand to be included." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (citing *New York Univ. v. Cont'l Ins. Co.*, 639 N.Y.2d 308, 318 (1995)) (internal quotations omitted).  An implied covenant of good faith and fair dealing can survive a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract.  *See Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (applying New York law); *accord Berkeley Research Grp. v. FTI Consulting, Inc.*, 69 N.Y.S.3d 26, 29 (1st Dep't 2018).

In this case, the contractual good faith and fair dealing counterclaim is duplicative of the breach of contract claim.  The breach of contract counterclaim alleges that NCR was harmed because, contrary to the commitments made in the SOW, BCG did not "work tirelessly to help NCR win in the market."  The breach of contract counterclaim also alleges that BCG improperly used confidential information by providing it to Nuance in order to facilitate Mr. Benjamin's candidacy at that company.  The breach of implied covenant claim uses exactly same language to make the same allegations, specifically, that BCG had an express obligation "to work tirelessly to help NCR win in the market" and that BCG used confidential information to help secure Mr. Benjamin alternate employment.

NCR's argument that its implied covenant claim is pleaded in the alternative is not persuasive.  An implied covenant claim is not a valid alternative theory of recovery when it is based on the same allegations as the breach of contract claim.  *See EFT Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F.Supp.3d 89, 94-95 (S.D.N.Y. 2018).  NCR cites *Spinelli*, arguing that courts allow "parties to bring [implied covenant claims] when they are based on the same facts and seek the same damages."  While the Second Circuit in *Spinelli* noted that a party may seek damages based on mutually exclusive theories of breach of contract, the court also stated that a party "certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts."  903 F.3d at 206.

Accordingly, BCG's motion to dismiss NCR's breach of the implied covenant of good faith and fair dealing claim is granted.

### E.  Damages

BCG also argues that the Counterclaims fail to plead damages that resulted from BCG's alleged misconduct.  This argument is not a basis to dismiss the pleadings.  At the motion to dismiss stage, the party pleading a claim need not specify the measure of damages nor plead specific proof of causation.  *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15 Civ. 2044, 2016 WL 205445 at *7 (S.D.N.Y. Jan. 15, 2016) (internal citations omitted) (applying New York law).  Even for speculative damages, under New York law, nominal damages are available and would preclude a motion to dismiss on the basis of failure to allege facts sufficient to establish damages.  *See Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015).  NCR has sufficiently pleaded damages for its surviving claims.

## IV.   CONCLUSION

For the foregoing reasons, BCG's motion to dismiss the Counterclaims is granted in part

and denied in part.  BCG's application for oral argument at Docket No. 45 is denied as moot.

The Clerk of Court is respectfully directed to close the motions at Docket No. 34 and 45.

SO ORDERED.

Dated: September 24, 2020
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

13